# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Marquita Nashae Owens, | Case No. 16-cv-00614-JRT-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Nancy A. Berryhill,<br>*Acting Commissioner of Social Security*, | |
| Defendant. | |

This matter is before the Court for a Report and Recommendation ("R&R") on the parties' cross-motions for summary judgment. Pl.'s Mot. for Summ. J., ECF No. 16; Def.'s Mot. for Summ. J., ECF No. 21. For the reasons set forth below, the Court recommends that the plaintiff's and defendant's motions both be granted in part and denied in part, and that this case be remanded to the Social Security Administration ("SSA") for further proceedings consistent with this R&R.[1]

## I. Introduction and Procedural History

On December 18, 2012, Marquita Owens applied for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act alleging she has been disabled within the meaning of the Act since January 1, 2005. Tr. of Admin. R. ("AR") 194-197, 201-07, ECF No. 11. The SSA denied Ms. Owens's claims initially and on reconsideration. AR 83-93, 94-104, 107-18, 119-130. Ms. Owens requested a hearing before an Administrative Law Judge ("ALJ"), AR 156-57, which was conducted on August 19, 2014, AR 37-80.

At the hearing, the ALJ heard testimony from Ms. Owens and an impartial vocational expert. AR 37-80. Ms. Owens's disability claims were denied in a written

---

[1] Unless otherwise noted, the citations in this R&R are to the regulations and guidance that were in force at the time of the ALJ's decision.

1

decision dated August 29, 2014. AR 18-36. Ms. Owens sought review of the ALJ's decision, AR 8, but her request was denied, AR 1-6. The ALJ's decision became the final decision of the Commissioner of Social Security on January 30, 2016, and her case is now before the Court for judicial review pursuant to 42 U.S.C. § 405(g).

In her motion for summary judgment, Ms. Owens asks the Court to reverse the Commissioner's decision and award benefits, or, in the alternative, to remand the case to the SSA for further proceedings. Pl.'s Mem. at 3, ECF No. 18. In support of the motion, Ms. Owens raises three challenges: (1) the ALJ improperly gave little weight to Ms. Owens's examining sources in analyzing the applicability of Listing 12.04, *id.* at 14-17; (2) the ALJ failed to consider whether Ms. Owens meets the criteria of Listing 12.05, *id.* at 14, 17-18; and (3) the ALJ improperly weighed the medical opinion evidence in determining her residual functioning capacity ("RFC"), which led to the ALJ posing improper hypotheticals to the vocational expert during the hearing, *id.* at 18-26. The Commissioner asserts that the ALJ's decision suffered from no such errors and is supported by substantial evidence in the record as a whole. Def.'s Mem. at 5-19, ECF No. 22.

## II. Factual History and the Medical Record

Ms. Owens is twenty-eight years old. She has a number of mental health diagnoses that the ALJ found constitute severe impairments, including major depressive disorder; generalized anxiety disorder, which has also been described as post-traumatic stress disorder ("PTSD"); panic disorder; attention deficit disorder; and borderline intellectual functioning. AR 20. She also has asthma and a history of marijuana abuse. AR 20. Ms. Owens claims that she became disabled as a result of these impairments on January 1, 2005, when she was fifteen years old. AR 18, 194. Before and after her alleged onset date, Ms. Owens held various jobs, including as a cashier, personal care attendant, and hair braider. AR 20, 255, 300.

### Psychological Testing

As a child, Ms. Owens struggled in school. AR 476-77, 481-82. In June 2004, when she was fifteen years old, Ms. Owens participated in a psychological assessment through her school. AR 474-79. During the testing, she completed a Wechsler Intelligence Scale for Children-IV ("WISC-IV") test. AR 475. Her full-scale IQ score was 77, and her subscores included a verbal comprehension score of 61. AR 475. Another test administered that day indicated Ms. Owens's reading comprehension

was below that of an average third grader. AR 475, 477. Ms. Owens's school psychologist indicated that her scores made it difficult to summarize her intellectual functioning, but that overall, she fell within the "[b]orderline range." AR 476, 479. Her true test scores ranged from indicating mild mental retardation to average functioning. AR 479.

In June 2013, Ms. Owens again underwent psychological testing, this time performed by psychologist Dr. Heidi Kopacek. AR 443-52.[2] Dr. Kopacek administered a Wechsler Adult Intelligence Scale-IV ("WAIS-IV") test, an adult IQ test. AR 446. Ms. Owens's WAIS-IV results were significantly lower than her WISC-IV results. Her full-scale IQ score was 59, and her various subscores were generally lower than they were in 2004. AR 446. Dr. Kopacek noted that the "obtained test scores appear to be a valid estimate of [Ms. Owens's] current intellectual functioning." AR 446. Dr. Kopacek also opined that Ms. Owen's IQ was in the "extremely low" range, which suggested mild mental retardation, but that she would need additional information to confirm the diagnosis. AR 450. Dr. Kopacek requested that Ms. Owens's sister complete an Adaptive Behavior Assessment System test, the results of which indicated that Ms. Owens was mildly mentally retarded. AR 449-50.

**Mr. Bradley Dreis**

In February 2013, Ms. Owens began seeing licensed professional clinical counselor Bradley Dreis. AR 358-364, 365-70. During her initial diagnostic assessment, Mr. Dreis indicated that Ms. Owens had moderately severe depression, an inability to achieve an appropriate sleep cycle, feelings of worthlessness and guilt, difficulty concentrating, and a frequent desire to isolate herself, among other issues. AR 363.

After three counseling sessions, Mr. Dreis completed a mental medical source statement form opining on Ms. Owens's mental impairments and how they affect her life. AR 385-87. Mr. Dreis specifically noted that he was filling out the form with

---

[2] The record contains two copies of Dr. Kopacek's report summarizing her June 19, 2013 assessment of Ms. Owens. The first was signed on July 5, 2013. AR 433-42. The second is an amended version of the original report that includes the Adaptive Behavior Assessment System test results based on Ms. Owens's sister's report. AR 449-50. The later report was signed on August 7, 2013. AR 443-53.

limited data, but that he would continue to work with Ms. Owens during future weekly appointments. AR 385-87. In the report, Mr. Dreis found that Ms. Owens had major depressive disorder and anxiety disorder not otherwise specified. AR 385. He wrote that she suffered from severe depressive symptoms, an inability to feel pleasure, depressed mood, decreased energy, grief, and anxiety, among other symptoms. AR 385. He indicated that Ms. Owens had a poor ability to complete a normal workweek or to work near others without being distracted by them, and that her mental health significantly impacted her ability to interact with others consistently. AR 386. But, Mr. Dreis also opined that it was likely Ms. Owens's symptoms would improve with continued treatment. AR 385.

In the weeks and months that followed, Ms. Owens had more than two dozen sessions with Mr. Dreis. AR 487-553. His assessment of Ms. Owens's mental health is marked by stretches where her impairments are more severe and stretches where she seems to be improving. *E.g.*, AR 491, 493, 495, 497 (progress notes from April 2014 indicating Ms. Owens was distracted, depressed, made little eye contact, and struggled to communicate); AR 503, 505, 507 (progress notes from January and February 2014 indicating Ms. Owens was smiling more, had purchased a car, was going to church and developing a support network, and felt she was doing "alright"); AR 509, 511, 513, 515 (progress notes from November and December 2013 and January 2014 indicating Ms. Owens vacillated between better and worse moods on a session-by-session basis). Mr. Dreis's detailed notes about Ms. Owens's mental health span months and indicate that her mental health could and did improve, but that such improvements were episodic and interspersed with periods of struggle.

### Dr. Alford Karayusuf

On February 28, 2013, Ms. Owens underwent a consultative examination with psychiatrist Dr. Alford Karayusuf. AR 380-82 Dr. Karayusuf noted that Ms. Owens had previously been diagnosed with moderate major depression and anxiety, among other things. AR 380. He wrote that she had struggled with severe depression and despair since the death of her mother roughly eight months earlier. AR 380. Dr. Karayusuf also indicated that she was anxious, hopeless, and that her concentration and memory were diminished. AR 380. He noted that Ms. Owens had no hobbies, few friends, and that she rarely engaged in social activities. AR 381. Based on the examination, Dr. Karayusuf opined that Ms. Owens was unable to "interact with fellow workers, supervisors, and the public due to the severity of her

4

depression." AR 381. He also said that she would be unable to maintain pace and persistence. AR 381.

### SSA's Nonexamining Consultants

Ms. Owens's benefits application was reviewed by two SSA nonexamining psychologists, Dr. Mel Zwissler and Dr. Russell Ludeke. AR 83-93, 94-104, 107-18, 119-130. Both Drs. Zwissler and Ludeke considered whether Ms. Owens met the criteria for Listings 12.02 and 12.04 (organic mental disorders and affective disorders, respectively), and both indicated that she met none of the criteria ("A," "B," or "C") for either Listing. AR 88, 99, 113, 125. Both recommended limitations on Ms. Owens's interaction with the general public, but otherwise indicated she has "no more than moderate limitations in critical domains." AR 90-91, 101-02, 116, 128.

## III. The ALJ's Decision

After the hearing, the ALJ denied Ms. Owens's application for benefits in a written decision dated August 29, 2014. AR 18-31. Though Ms. Owens had worked periodically after her alleged onset date, the ALJ found that her work activities did not rise to the level of substantial gainful activity at any time after her alleged onset date. AR 20. At Step 2, the ALJ determined that Ms. Owens had the following severe impairments: major depressive disorder, generalized anxiety disorder (which was also diagnosed as PTSD), panic disorder, attention deficit disorder, borderline intellectual functioning, asthma, and a history of marijuana abuse. AR 20. At Step 3, the ALJ found that none of these impairments or combination of impairments met or medically equaled any of the SSA's Listings.[3] The ALJ explicitly declined to consider whether Ms. Owens met Listing 12.05, which covers intellectual disorders, because he found Ms. Owens's intellectual impairments qualified as "borderline intellectual functioning rather than mild intellectual disability." AR 21.

The ALJ then considered what Ms. Owens would still be able to do in light of all of her severe and non-severe impairments (i.e., her RFC). AR 24. The ALJ found

---

[3] Although the ALJ considered whether Ms. Owens met the criteria for a number of Listings, AR 22-24, Ms. Owens is only contesting the ALJ's determination that she does not meet the criteria of Listing 12.04 and the ALJ's failure to consider whether she meets Listing 12.05.

5

that Ms. Owens' RFC allows her to "perform a full range of light work at all exertional levels, but with the following nonexertional limitations: performing simple repetitive instructions and tasks, with no strict timed tasks, speeded tasks or high production quotas, no exposure to high concentrations of dust, fumes, gases and other airborne irritants." AR 24.

In making this RFC finding, the ALJ indicated that the medical evidence did not support the mental limitations alleged, but that it supported the RFC assessed. AR 25. He also determined that while Ms. Owens's impairments could reasonably be expected to cause her alleged symptoms, Ms. Owens's and her sister's statements about the intensity, persistence, and limiting effects of those symptoms were not entirely credible. AR 25, 30.

In reaching this conclusion and the RFC more generally, the ALJ gave little or no weight to various medical opinions in the record, instead assessing the objective evidence and interpreting how Ms. Owens's various impairments affected her ability to work. *See* AR 25-30. The ALJ discounted the June 2013 IQ test because the scores were much lower than her childhood IQ test. AR 21-22. The ALJ also discounted the subsequent diagnosis of mild mental retardation because it was based in part on an additional diagnosis of attention deficit hyperactivity disorder for which Ms. Owens took no medication, and on the report of her sister, which the ALJ believed was unreliable. AR 21-22. The ALJ gave Mr. Dreis's report no weight because it was based on limited information and his own subsequent treatment notes indicated Ms. Owens's mental health was improving. AR 29-30. Dr. Karayusuf's opinion was afforded no weight because the ALJ found it was unsupported by the rest of the record. AR 27-28. And the ALJ gave the SSA's nonexamining sources only "some weight" because he found their recommended limitations on social functioning were not supported by Ms. Owens's reported social interactions. AR 29.

## IV. Standard of Review

The Court's task is not to imagine how it would balance the considerations inherent in Ms. Owens's claim of disability in the first instance, but to review the ALJ's evaluation of those considerations and ensure that it comports with the law and is supported by substantial evidence. The Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g), and the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

6

This review is deferential, *see Kelley v. Barnhart*, 372 F.3d 958, 960 (8th Cir. 2004), and is "limited to determining whether there is substantial evidence based on the entire record to support the ALJ's factual findings, and whether [the] decision was based on legal error." *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996); *see also Tellez v. Barnhart*, 403 F.3d 953, 956 (8th Cir. 2005); *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotation marks omitted).

Although the ALJ's decision merits deference, the Court must also ensure that the ultimate decision properly considered those facts that weigh against the ALJ's conclusion as well as those that support it. "There is a notable difference between substantial evidence and substantial evidence on the record as a whole. . . . [Review of the whole record] must take into account whatever in the record fairly detracts from [an administrative decision's] weight." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987) (internal quotation marks omitted). Nonetheless, the Court should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (internal citations omitted). And where substantial evidence supports the Commissioner's findings, the Court should not reverse those findings merely because other evidence exists in the record to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994).

## V. Evaluation of Opinion Evidence

Ms. Owens raises three challenges to the ALJ's opinion. First, she argues that the ALJ improperly found she failed to meet the criteria of Listing 12.04. Pl.'s Mem. at 14-17. Second, Ms. Owens asserts that the ALJ erred in failing to consider whether she meets the criteria of Listing 12.05. *Id.* at 14, 17-18. And third, she contends that the ALJ improperly weighed the medical opinion evidence in determining her RFC, leading to the ALJ posing improper hypotheticals to the vocational expert during the hearing. *Id.* at 18-26. For the reasons set forth below, the Court finds that the ALJ erred in failing to consider whether Ms. Owens meets the criteria of Listing 12.05, but that the opinion is otherwise supported by substantial evidence on the record as a whole.

### A. Listing 12.04

Ms. Owens argues that the ALJ erred during his consideration of whether she met or medically equaled the criteria of Listing 12.04 by giving no weight to the opinions of Mr. Dreis and Dr. Karayusuf. *Id.* at 16-17. She asserts that their reports establish that she meets the "A" and "B" criteria of Listing 12.04, and that it was error to discount them. *Id.* However, after a thorough review of the record, the Court finds the ALJ properly weighed the medical opinion evidence.

An ALJ's finding should not be reversed "simply because some evidence may support the opposite conclusion." *Mitchell*, 25 F.3d at 714. Indeed, the Court must affirm where substantial evidence supports the ALJ's conclusion, even where "the evidence as a whole can support either outcome." *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995). When an ALJ affords an examining source's opinion little or no weight, he should "give good reasons for doing so." *See Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010). An ALJ can discount a therapist's or counselor's opinion when it is inconsistent with his own treatment notes. *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005). And it is proper to discount the opinion of a consulting source where his assessment is inconsistent with the medical evidence as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007) (indicating medical opinions can be given less weight when they are inconsistent with or contrary to the medical evidence as a whole). Additionally, an ALJ should consider the length of the treatment relationship at the time an opinion is given when deciding how much weight to afford an assessment. *See Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015).

The ALJ's handling of both reports is supported by the record. The most extensive mental health treatment notes in the record are those from Mr. Dreis. *See* AR 358-70, 487-553. However, as the ALJ indicated, those notes do not fully support Mr. Dreis's report that Ms. Owens relies on to argue she meets Listing 12.04. Mr. Dreis indicated that Ms. Owens had ups and downs in her mental health, with all of the upswings in his notes taking place after his report was written and once Ms. Owens began to regularly attend sessions with him. *E.g.*, 503, 505, 507, 509, 511, 513, 515. Mr. Dreis admitted that the report Ms. Owens attempts to rely on was based on limited information after very recently starting a treatment relationship with her, thereby undermining its probative value. 385-87.

8

Furthermore, Mr. Dreis's notes undermine the conclusions in Dr. Karayusuf's assessment. While Dr. Karayusuf indicated Ms. Owens had no hobbies, few friends, and that she rarely engaged in social activities, AR 381, Mr. Dreis indicated that at various points, Ms. Owens attended church and was developing a social support network, AR 503, 505, 507. Dr. Karayusuf opined that Ms. Owens would be unable to interact with others in a workplace situation, but her ability to interact with family and friends in church and other social settings undercuts Dr. Karayusuf's description of her impairments.

The ALJ clearly explained the reasons that led him to discount Mr. Dreis's and Dr. Karayusuf's reports, and those reasons are all valid grounds upon which to afford an examining source less weight. AR 27-30; *see Raney*, 396 F.3d at 1010; *Lawson*, 807 F.3d at 965; *Travis*, 477 F.3d at 1040. To be sure, Ms. Owens has intermittently worse symptoms from her impairments. But, as set forth above, the Court finds that is also substantial evidence on the record as a whole to support the ALJ's finding that Ms. Owens does not meet the criteria of Listing 12.04. Therefore, the Court recommends that the ALJ's decision be affirmed on this point. *Mitchell*, 25 F.3d at 714.

### B. Listing 12.05

Next, Ms. Owens argues that the ALJ erred in failing to consider whether she meets the criteria of Listing 12.05. Pl.'s Mem. at 14, 17-18. Based on the SSA's regulations and a review of the record, the Court finds that the ALJ committed reversible error in failing to consider whether Ms. Owens met or medically equaled Listing 12.05.

The ALJ's decision contains three main errors related to the consideration of Listing 12.05. First, the ALJ wrote that Ms. Owens had undergone two WAIS IQ tests, AR 21, but this is factually incorrect. In June 2004, Ms. Owens completed a WISC-IV assessment, AR 476-77, an intelligence test that is performed on children under the age of sixteen. Her June 2013 test was a WAIS-IV assessment, which is performed on adults. AR 446. Because the WISC-IV and WAIS-IV tests are geared toward individuals in different stages of their life and intelligence development, their scores are not necessarily directly comparable. *See Lowery v. Sullivan*, 979 F.2d 835, 839 (11th Cir. 1992) (indicating it was improper for ALJ to directly compare WISC and WAIS scores without converting them to a standard metric). The ALJ erred in failing to consider the differences between the two sets of test scores.

The ALJ's second error relates to his discounting the June 2013 test results. The ALJ's discussion of this round of testing focuses on the diagnosis of mild mental retardation. AR 21-22. He provides various reasons for discounting that diagnosis, including that it was based in part on Ms. Owens's ADHD diagnosis, her sister's report of her limitations, and that Ms. Owens objected to the label of being "retarded." AR 21-22. However, at no point did the ALJ discuss the actual scores and subscores assessed beyond noting that they were "much lower" than the June 2004 testing. AR 21.

An IQ score far is more relevant than the diagnosis or label in determining whether an ALJ must consider Listing 12.05. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 § 12.05 (indicating that the sort of evidence required to establish a claimant meets the Listing is determined by her valid verbal, performance, or full scale IQ score). Indeed, current SSA guidance on analyzing intellectual disability says it is of the "utmost importance" that IQ test results be "sufficiently current to give an accurate and realistic picture of mental capacity." Program Operations Manual System ("POMS"), DI 24515.055D (Mar. 2, 2017), *available at* https://secure.ssa.gov/poms.nsf/lnx/0424515055.[4] To that end, childhood test scores for assessments conducted before the age of sixteen are generally only current for two years. *Id.* Test scores obtained after the age of sixteen, however, "may be assumed to apply to the subject's current status" when the scores are compatible with the individual's current behavior. *Id.* As a result, older test scores are generally used to establish onset date rather than as indications of an adult's current functioning. *See Lowery*, 979 F.2d at 839. It is valid, current test scores, not a claimant's diagnoses, that trigger consideration of Listing 12.05. As such, the ALJ improperly discounted Ms. Owens's more recent IQ scores and failed to appropriately assess the relevance of her older scores.

Third, and independent of the other errors, the ALJ erred in how he considered the IQ test results that he did not ignore. The SSA's regulations indicate that when an IQ test presents both a full scale and various subscores, the relevant

---

[4] POMS guidance is not binding on either the SSA or the Court, but it warrants deference to the extent that it is informative and has the power to inform the Court about how best to analyze an issue. *Draper v. Colvin*, 779 F.3d 556, 561 (8th Cir. 2015). As a result, it is of no consequence that the current POMS guidance on this front was not in force at the time of the ALJ's decision.

score to use in the analysis is the lowest. 20 C.F.R. pt. 404, subpt. P, App. 1 § 12.00D(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."). Therefore, even if it was correct for the ALJ to rely only on Ms. Owens's June 2004 testing, the ALJ erred by discussing only Ms. Owens's full scale WISC-IV score of 77 while ignoring her lowest subscore, which was her verbal comprehension score of 61. AR 475. *Miles v. Barnhart*, 374 F.3d 694, 700 (8th Cir. 2004) ("[I]n cases where more than one score is derived from a valid IQ test, an ALJ must choose the lowest score . . . .").

Based on these errors, the Court finds that the ALJ's failure to consider whether Ms. Owens meets or medically equals the criteria of Listing 12.05 necessitates remand to the SSA for further proceedings, specifically for consideration of whether Ms. Owens meets Listing 12.05.

### C.   Ms. Owens's RFC

Finally, Ms. Owens argues that the ALJ's RFC determination is not supported by substantial evidence on the record as a whole because the ALJ improperly discounted the medical opinions of Mr. Dreis and Dr. Karayusuf. Pl.'s Mem. at 24-26. As discussed above, the Court believes that the ALJ properly weighed the medical opinions of Mr. Dreis and Dr. Karayusuf in considering whether Ms. Owens met Listing 12.04, and the same analysis applies to the weight afforded to their reports in the ALJ's RFC determination. Because there was no error in how the ALJ weighed the medical opinions evidence, Ms. Owens's argument about improper hypotheticals being posed to the vocational expert during the hearing is likewise unavailing. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion . . . that the ALJ's findings of [the plaintiff's] RFC are supported by substantial evidence, we hold that the hypothetical question was therefore proper, and the [vocational expert]'s answer constituted substantial evidence supporting the Commissioner's denial of benefits.").

## VI.   Conclusion

The Court has carefully reviewed the entire record in this case and finds that remand is necessary for the reasons set forth above. On remand, the ALJ must consider whether Ms. Owens meets the criteria of Listing 12.05 in light of the

governing regulations and the record as a whole. However, there are no other grounds on which the Court recommends remand. If the District Court finds that substantial evidence supports the ALJ's decision not to consider Listing 12.05, the Court would recommend affirming the Commissioner's determination.

## Recommendation

Based on the foregoing, the Court makes the following recommendation:

1. Ms. Owens's motion for summary judgment, ECF No. 16, be **GRANTED IN PART and DENIED IN PART** consistent with the above analysis.

2. The Commissioner's motion for summary judgment, ECF No. 21, be **GRANTED IN PART and DENIED IN PART** consistent with the above analysis.

3. This case be **REMANDED** to the Commissioner for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g), consistent with this opinion.


Date: June 23, 2017
                                                           s/ *Katherine Menendez*
                                                           Katherine Menendez
                                                           United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.